## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JODY SAUNDERS,          )
                       )
     Plaintiff,         )
                       )
v.                    )     Civil Action File No.
                       )
THE POSTCARD        )     _____
FACTORY, INC.         )
                       )
     Defendant.     )
                       )

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW Jody Saunders and files this Complaint for Damages and Equitable Relief against The Postcard Factory, Inc., showing this Honorable Court as follows:

## JURISDICTION AND VENUE

1. This civil action is brought pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq.* (the "ADA") and Title I of the Civil Rights Act of 1991 to remedy unlawful employment practices based on a disability.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1337, 1343 and 1345.

3. Venue is proper in this Court because the Defendant has conducted business

in this judicial district/division and the employment practices involved in this dispute occurred in this judicial district/division.

## PARTIES

4. Plaintiff Jody Saunders ("Plaintiff" or "Ms. Saunders") is an individual currently residing in Tamarac, Florida. At all relevant times, Ms. Saunders was an "employee" of PCF within the meaning of the ADA.

5. At all relevant times Ms. Saunders was a "qualified employee" as defined by 42 U.S.C. §12111(8) of the ADA because she was able to perform the essential functions of the position she held, with or without reasonable accommodation.

6. Defendant The Postcard Factory, Inc. ("PCF") is a foreign profit corporation authorized and doing business in the State of Georgia. It may be served with process by and through its Registered Agent: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.

7. At all times pertinent to this action, PCF was Ms. Saunders's "employer" as that term is defined by the ADA, 42 U.S.C. § 12111(5)(A).

8. At all relevant times, PCF was engaged in the business of developing and selling souvenirs, such as key chains, magnets, postcards, mugs, shot glasses, pens/pencils and other similar products displayed for sale at airport shops, drug stores, big-box retailers and other retail stores in multiple states, and had at least 25

or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

9. PCF distributes its product throughout North America, including in the United States.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Ms. Saunders exhausted her administrative remedies under the ADA by timely filing a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about February 7, 2018, well within 180 days of the occurrence of the acts of which she complaints. The EEOC designated her Charge number 410-2018-03145. A true and correct copy of Ms. Saunders's Charge of Discrimination is attached hereto as **Exhibit A** and is incorporated herein by reference.

11. On or about November 6, 2018, the EEOC issued Ms. Saunders a Notice of Right to Sue on her Charge of Discrimination, a true and correct copy of which is attached hereto as **Exhibit B** and is incorporated herein by reference.

12. This civil action was timely filed less than 90 days from the date the EEOC issued Ms. Saunders a Notice of Right to Sue.

## STATEMENT OF FACTS

13. PCF employed Ms. Saunders as a "Souvenir Specialist" from approximately 2011 until January 23, 2018, when PCF terminated her

employment.

14. A true and correct copy of Ms. Saunders's business card for her position with PCF is attached hereto as **Exhibit C** and is incorporated herein by reference.

15. Ms. Saunders performed her souvenir specialist duties for PCF in Atlanta, Savannah, Charleston, South Carolina and Hilton Head, South Carolina, and their respective surrounding areas.

16. A Souvenir Specialist is an integral part of PCF's business.

17. As a Souvenir Specialist, Ms. Saunders did not have any specialized skill.

18. PCF supplied Ms. Saunders a comprehensive PCF Sales Manual containing detailed sales policies and procedures. The PCF Sales Manual sets forth, in detail, how Souvenir Specialists, like Ms. Saunders, are expected to perform her duties by conforming to a wide variety of PCF sales policies and procedures, including without limitation how to: complete an order form, set up new customers in PCF's customer data base, adding an existing customer's new store to PCF's data base, customer payment terms and conditions of sale, handling back-orders and out-of-stock items, customer order turnaround policy, order shipments, change orders, minimum order policy, invoicing deadline policy, price policy, freight policy, credit memo procedures, short shipments, damaged or defective products, merchandise returns, and the like.

19. A true and correct copy of the PCF Sales Manual's Table of Contents is

attached hereto as **EXHIBIT D** and is incorporated herein by reference.

20. Ms. Saunders's failure to adhere to PCF's sales policies and procedures authorized PCF to deduct from her earned sales commissions charge backs or to make other adjustments which, in PCF's sole discretion, were deemed appropriate by PCF management as result of Ms. Saunders's lack of adherence to PCF policies.

21. PCF had the authority to require Ms. Saunders to purchase competitors' samples to assist it in market assessments for which PCF would reimburse her, provided she supplied PCF with receipts.

22. PCF had the authority to require Ms. Saunders to attend trade shows as it deemed necessary.

23. PCF required Ms. Saunders to maintain and operate and automobiles and to insure it, naming PCF as an additional insured, at her own expense.

24. PCF required Ms. Saunders to have internet access at her own expense.

25. PCF supplied Ms. Saunders with all new product samples.

26. PCF also provided Ms. Saunders with an iPad to complete and enter PCF sales orders.

27. PCF dictated and controlled Ms. Saunders's sales territory.

28. PCF determined and controlled Ms. Saunders's sales targets.

29. PCF determined Ms. Saunders' compensation, including the sales commission rate it would pay her, and had the discretion to reduce Ms. Saunders's

commission on products she sold.

30. PCF retained for itself the right to unilaterally withhold or adjust Ms. Saunders's sales commission on customer invoices which were over 90 days past due, and if Ms. Saunders assisted PCF with the collection of an unpaid receivable, PCF would only give her one-half of her earned commission, provided she requested the return of her earned commission within three months of PCF collecting the receivable.

31. PCF required Ms. Saunders to be on the road selling every single business, regardless of the time of year.

32. PCF determined the sales price of its products.

33. Ms. Saunders lacked the authority to offer PCF customers special discounts or price adjustments without receiving prior approval from PCF's Sales Manager.

34. PCF required Ms. Saunders to display and sell new products which had lower than usual margins which, in turn, produced a lower sales commission for Ms. Saunders.

35. PCF deducted from Ms. Saunders's earned sales commission royalties paid, volume rebates paid to customers and the cost of display racks PCF sent to Ms. Saunders's customers.

36. PCF reimbursed Ms. Saunders for certain business expenses she incurred, like signage and business cards.

37. PCF's investment in its business significantly exceeded Ms. Saunders's investment.

38. Ms. Saunders was directly supervised by PCF's Regional Sales Manager, Steve Kaufman and PCF's Vice President of Sales (U.S.), Jeremy Fife.

39. PCF imposed upon Ms. Sanders various sales reporting requirements.

40. PCF required Ms. Saunders to conform her conduct and sales to PCF's specific sales policies and procedures.

41. PCF required Ms. Saunders to service accounts which she did not wish to service because they were either too distant or were not profitable for her to service.

42. PCF mandated that Ms. Saunders write and transmit orders every single working day, and if she was unable to do so, PCF required Ms. Saunders to inform her PCF Regional Manager or direct supervisor.

43. PCF prohibited Ms. Saunders from carrying souvenir lines of other manufacturers.

44. PCF counseled Ms. Saunders for refusing to service Wal-Mart stores.

45. PCF required Ms. Saunders to execute a covenant not to compete which prohibited her from becoming employed, retained, or under contract with any competing company within a 50 mile radius of any PCF location (or from where Ms. Saunders performed services for PCF) while she was employed by PCF and

for a period of 12 months immediately following her termination.

46. PCF required Ms. Saunders to execute a covenant not to solicit any PCF customer, supplier, manufacturer or other person who had a business relationship with PCF or who was a prospect for a business relationship with PCF at any time during her employment with PCF.

47. PCF required Ms. Saunders to covenant not to own any interest in or be employed or retained by or provide any services to any person or entity providing services or products similar to or competing with PCF.

48. PCF provided Ms. Saunders with a $400 per month car allowance.

49. Ms. Saunders worked for PCF on and off again between 2011 and January 2018, for a total of approximately six and one-half years.

50. Ms. Saunders resigned her employment with PCF in 2015 because PCF unilaterally reduced her sales commission from 15% to 12%. Thereafter, PCF hired her back when it agreed to increase her sale commission to 14%.

51. Ms. Saunders suffers from chronic bronchitis and obstructive pulmonary disorder ("COPD"), physical impairments which substantially limit her major life activity of breathing.

52. Notwithstanding this physical impairment, at all relevant times Ms. Saunders could perform the essential functions of her position with PCF, with or without a reasonable accommodation.

53. In or about August/September, 2017, PCF reduced Ms. Saunders's assigned sales territory over her objection.

54. In 2017, Ms. Saunders's sales numbers increased.

55. In January 2018, Ms. Saunders was hospitalized for acute respiratory failure.

56. PCF was aware of Ms. Saunders's hospitalization in January 2018.

57. On or about January 23, 2018, PCF terminated Ms. Saunders's employment.

58. PCF terminated Ms. Saunders's employment because of her disability.

59. PCF's CEO, Irving Alan Weisdorf made the decision to terminate Ms. Saunders's employment.

60. In terminating Ms. Saunders's employment, Mr. Weisdorf e-mailed Ms. Saunders:

> Dear Jody,
>
> I want to thank you for your 6½ years of working for PCF. We had both good times and bad together. As you wrote: "It's been mostly a pleasure!"
>
> I think you know that things were far from perfect, even before you took ill. You blasted PCF on the internet – that was the starting point. Not a good idea to do if you want to continue representing a company. That's advice for the future!
>
> As well, you have quit on us twice. So for the sake of the company, we had to plan this out in advance.

Finally, you are not well enough physically to do the job we need you to do. The constraints that COPD puts on you can be incapacitating, and it would be the wrong move to simply wait for proof of that. As well, you put your own self at risk with a heavy schedule.

I would strongly suggest finding a position that is less strenuous, less demanding. You have done a stellar job on many fronts. We that you for it and honestly wish you all the best in the future.

Irving

61. A true and correct copy of Mr. Weisdorf's January 23, 2018 e-mail to Ms. Saunders is attached hereto as **Exhibit E** and is incorporated herein by reference.

62. Mr. Weisdorf's January 23, 2018 e-mail constitutes direct evidence of discrimination on the basis of Ms. Saunders's disability, or perceived disability.

63. PCF replaced Ms. Saunders with Becky Jinks, an individual who does not have a disability.

64. Alternatively, PCF treated Ms. Saunders less favorably than it treated individual comparators who were not disabled or perceived as disabled.

65. Since her termination, Ms. Saunders has been unemployed and/or underemployed, and has suffered damages in the form of lost wages and interest thereon.

## COUNT I

## <u>VIOLATION OF THE ADA:</u>

## <u>DISCRIMINATION ON THE BASIS OF A DISABILITY</u>

66. Plaintiff realleges paragraphs 1-65 of her Complaint as if fully set forth herein.

67. The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees." 42 U.S.C. § 12112(a).

68. Ms. Saunders suffers from a physical impairment (COPD) which significantly impairs her major life activity of breathing.

69. Notwithstanding this physical impairment, Ms. Saunders was, at all relevant times, able to perform the essential functions of her duties as PCF's Souvenir Specialist, a position she successfully performed at PCF for over six (6) years.

70. Ms. Saunders was a qualified individual with a disability.

71. PCF terminated Ms. Saunders's employment on January 23, 2018.

72. PCF's termination of Ms. Saunders was because of her disability.

73. PCF's termination of Ms. Saunders violated her rights under the ADA.

74. PCF's violation of Ms. Saunders's ADA rights was willful or done with malice or reckless indifference to the consequences of Ms. Saunders's federally

protected rights under the ADA, as evidenced by Mr. Weisdorf's January 23, 2018 e-mail.

75.   As a direct and proximate cause of PCF's unlawful actions, Ms. Saunders has suffered both economic and non-economic losses in an amount to be specifically proven at trial.

## COUNT II

## VIOLATION OF THE ADA:

## DISCRIMINATION BASED ON BEING PERCEIVED OR "REGARDED AS" AN INDIVIDUAL WITH A DISABILITY

76. Plaintiff realleges paragraphs 1-75 of her Complaint as if fully set forth herein.

77. PCF regarded Ms. Saunders as having one or more physical impairments which substantially limited one or more major life activities.

78. Irrespective of whether Ms. Saunders has a "disability" as defined by 42 U.S.C. § 12102(2)(C), PCF perceived her as an individual with a disability.

79. PCF unlawfully discriminated against Ms. Saunders in violation of the ADA when it regarded her as having a disability and terminated her as a result thereof.

80. As a direct and proximate cause of PCF's unlawful actions, Ms. Saunders has suffered both economic and non-economic losses in an amount to be

specifically proven at trial.

81. At all relevant times, Ms. Saunders had the requisite skill and other job-related requirements needed to satisfactorily perform her position.

82. PCF's actions have caused, and will continue to cause, Ms. Saunders to suffer damages for lost wages and benefits, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

83. PCF's actions were done with malice and/or reckless disregard for Ms. Saunders's federally protected rights, entitling her to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Grant her a permanent injunction enjoining Defendant and its agents from engaging in any employment practice which discriminates against the Plaintiff and other similarly situated individuals because of their status of being disabled as defined by the Americans with Disabilities Act, as amended;

2. Grant Plaintiff judgment in her favor and against Defendant on all Counts of her Complaint;

3. Order Defendant to make Plaintiff whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages,

salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

4. Order Defendant to compensate plaintiff for mental and/or emotional damages and other compensatory damages suffered as a result of Defendant's unlawful and discriminatory acts;

5. Award Plaintiff punitive damages for Defendant's willful and intentional violations of the ADA as provided by 42 U.S.C. §§12117(a), 12203(c) and Title VII, as provided by 42 U.S.C. §1981a(b);

6. Order Defendant to grant Plaintiff front pay, commissions and benefits in the amount she would have earned had she not been terminated until such time as she obtains or could reasonably obtain such pay and benefits;

7. Grant Plaintiff a jury trial on all issues so triable;

8. Grant to Plaintiff her reasonable attorney's fee and reasonable expert witness fees together with any and all other costs associated with this action as provided by law; and

9. Grant such additional relief as the Court deems proper and just.

Respectfully submitted,

/s/ Dean R. Fuchs
DEAN R. FUCHS
Georgia Bar No. 279170
Attorney for Plaintiff Jody Saunders

14

SCHULTEN WARD TURNER & WEISS, LLP
260 Peachtree Street, NW
Suite 2700
Atlanta, GA 30303
(404) 688-6800
(404) 688-6840 facsimile
d.fuchs@swtwlaw.com

# EXHIBIT "A"

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; See Privacy<br>Act Statement before Completing this form. | AGENCY<br>☐ FEPA<br>☐ EEOC | CHARGE NUMBER<br>410-2018-03145 |
| --- | --- | --- |

_____ and EEOC

| State or Local Agency, if any | |
| --- | --- |

| NAME (Indicate Mr., Ms., Mrs.)<br>Ms. Jody Saunders | HOME TELEPHONE (Include Area Code)<br>(864) 884-8758 |
| --- | --- |
| STREET ADDRESS        CITY, STATE AND ZIP CODE<br>5 The Meadows Dr., Newnan, GA 30265 | DATE OF BIRTH<br>6/16/52 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICE COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one list below).

| NAME<br>The Postcard Factory, Inc. | NUMBER OF EMPLOYEES<br>APPROX. 150-200 | TELEPHONE (Include Area Code)<br>1-800-733 4395 |
| --- | --- | --- |
| STREET ADDRESS<br>7414 KINGSPOINTE PKWY, STE. 100, ORLANDO, FL 32819 | CITY, STATE AND ZIP CODE | COUNTY<br>ORANGE |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST (ADEA/EPA)   LATEST (ALL) |
| --- | --- |
| ☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN<br><br>☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ OTHER (Specify) E.P.A. | 1/23/2018<br>☐ CONTINUING ACTION |

**THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)**

I.   I am a qualified individual with a disability who can perform the essential functions of my position with or without a reasonable accommodation.  Since approximately May/June 2011, I have served as an outside sales representative for The Postcard Factory, Inc.

II.  On January 23, 2018, The Postcard Factory, Inc.'s CEO, Irving Alan Weisdorf, terminated my services.  Mr. Weisdorf sent me an e-mail indicating he did not believe I was "well enough physically to do the job [the Company] need[s] you to do.  The constraints that [your physical disability] puts on you can be incapacitating, and it would be the wrong move to simply wait for proof of that. As well, you put your own self at risk with a heavy schedule.  I would strongly suggest [you] find[] a position that is less strenuous, less demanding.  You have done a stellar job on many fronts.  We thank you for it and honestly wish you all the best in the future."

III. I have since been replaced by a non-disabled individual, who assumed responsibility for my former sales territory.

IV.  I believe I was terminated in violation of my rights under the Americans with Disabilities Act, as amended.

| ☒ I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements)<br>RECEIVED<br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| --- | --- |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Date 2/2/18   _Jody Saunders_<br>Charging Party (Signature) | SIGNATURE OF NOTARY PUBLIC   FEB 07 2018<br><br>SUBSCRIBED AND SWORN BEFORE ME THIS DATE<br>(Day, Month, and year)   EEOC-ATDO |

# EXHIBIT "B"

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Jody Saunders<br>5 The Meadows Drive<br>Newnan, GA 30265 | From: | Atlanta District Office<br>100 Alabama Street, S.W.<br>Suite 4R30<br>Atlanta, GA 30303 |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **410-2018-03145** | **Jane Suk,**<br>**Investigator** | **(404) 562-6827** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

NOV ... 2018

---

**Bernice Williams-Kimbrough,**
**District Director**

*(Date Mailed)*

Enclosures(s)

cc: Rachel D. Gebaide
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
215 North Eola Drive
Orlando, FL 32801

Dean R. Fuchs
SCHULTEN WARD TURNER & WEISS
260 Peachtree Street, NW, Suite 2700
Atlanta, GA 30303

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT "C"

**PCF SOUVENIRS™ THE POSTCARD FACTORY®**

**Jody Saunders**
Souvenir Specialist
jsaunders@pcfsouvenirs.com

Cell phone: **864-884-8758**

**Head Office**
Phone: **407-872-1364**
Fax: **407-872-1365**

**www.pcfsouvenirs.com**

**The Postcard Factory Inc.**
7414 Kingspointe Pkwy, Suite 100
Orlando, FL 32819

New York  •  Banff  •  Chicago  •  Toronto  •  Los Angeles  •  Mississippi  •  Atlanta  •  Victoria



**SOUVENIRS**
**THE POSTCARD FACTORY®**

•  Boston  •  Hong Kong  •  Manitoba  •  Quebec  •  Florida  •  Vancouver  •  Alabama  •  Cancun  •

# EXHIBIT "D"

New York • Banff • Chicago • Toronto • Los Angeles • Mississippi •

Boston • Lake Louise • Manitoba • Quebec • Florida • Vancouver • Alabama • Cancun • Washington D.C. •

PCF
SOUVENIRS

THE POSTCARD FACTORY®

# SALES MANUAL

San Diego • Philadelphia • Nova Scotia • Miami • San Francisco

THE POSTCARD FACTORY.

# Book One

## SALES
## POLICIES AND PROCEDURES

# 1. Table of Contents



|  | SECTION | PAGE NUMBER | LAST UPDATE |
|---|---|---|---|
| **1.** | **TABLE OF CONTENTS** | **1-1** | Mar. 29/13 |
| **2.** | **WHO WE ARE – The Postcard Factory & PCF Souvenirs** | | |
|  | A. Company History | **2-1** | Mar. 29/13 |
|  | B. Company Philosophy | **2-2** | Mar. 29/13 |
|  | C. Our Group of Companies | **2-2** | Mar. 29/13 |
|  | 1. PCF Stock Division | **2-2** | Mar. 29/13 |
|  | 2. PCF Custom Division | **2-2** | Mar. 29/13 |
|  | 3. Giggles & Gifts Division | **2-2** | Mar. 29/13 |
|  | 4. Licensed Division | **2-2** | Mar. 29/13 |
|  | 5. The Weisdorf Group Hong Kong Division | **2-3** | Mar. 29/13 |
|  | 6. The Postcard Factory Licensing Inc. | **2-3** | Mar. 29/13 |
|  | D. Mission Statement | **2-3** | Mar. 29/13 |
| **3.** | **WHO TO CALL - Markham Contacts** | **3-1** | Mar. 29/13 |
|  | A. How to Reach Us – Internal Contacts | **3-1** | Mar. 29/13 |
|  | B. PCF Distribution Centres | **3-1** | Mar. 29/13 |
| **4.** | **PRODUCT OFFERING** | **4-1** | Mar. 29/13 |
|  | A. Regular Stock Products | **4-1** | Mar. 29/13 |
|  | 1. Postcards | **4-1** | Mar. 29/13 |
|  | 2. Magnets | **4-1** | Mar. 29/13 |
|  | 3. Keychains | **4-2** | Mar. 29/13 |
|  | 4. Ceramics and Glassware | **4-2** | Mar. 29/13 |
|  | 5. Books | **4-3** | Mar. 29/13 |
|  | 6 Calendars | **4-3** | Mar. 29/13 |
|  | 7. Additional Souvenirs Categories | **4-3** | Mar. 29/13 |
|  | B. Licensed Stock Products | **4-3** | Mar. 29/13 |
|  | 1. Disney | **4-3** | Mar. 29/13 |
|  | 2. RCMP | **4-4** | Mar. 29/13 |
|  | C. Imprintables – Stock Product | **4-4** | Mar. 29/13 |

# 1. Table of Contents

| SECTION | | PAGE NUMBER | LAST UPDATE |
|---|---|---|---|
| | • Procedure for Pad Printing (APPENDIX I) | **4-4** | Mar. 29/13 |
| D. | Themed Programs | **4-4** | Mar. 29/13 |
| E. | For Additional Information | **4-4** | Mar. 29/13 |
| **5.** | **MANUAL ORDER PROCESSING** | **5-1** | Mar. 29/13 |
| A. | How to Complete a Manual Order Form | **5-1** | Mar. 29/13 |
| **6.** | **SFA ORDER PROCESSING** | **6-1** | Mar. 29/13 |
| A. | What is Sales Force Automation? | **6-1** | Mar. 29/13 |
| B. | Sales Representatives Responsibilities with the SFA | **6-1** | Mar. 29/13 |
| C. | How to use SFA Handheld Computer | **6-3** | Mar. 29/13 |
| | D.  Order Process Flow – Using SFA | **6-3** | Mar. 29/13 |
| E. | Pick Sheets – A Manual Back-up | **6-3** | Mar. 29/13 |
| **7.** | **SALES POLICIES** | **7-1** | Mar. 29/13 |
| A. | New Customer Set up Procedure | **7-1** | Mar. 29/13 |
| B. | Terms and Conditions of Sale | **7-2** | Mar. 29/13 |
| C. | Back Orders & Out-of-stocks / Low-stock Policy | **7-2** | Mar. 29/13 |
| D. | Order Turnaround Policy | **7-3** | Mar. 29/13 |
| E. | Prioritization of Shipments Policy | **7-3** | Mar. 29/13 |
| F. | Changes to Orders Policy | **7-3** | Mar. 29/13 |
| | G.  Minimum Order Policy | **7-4** | Mar. 29/13 |
| H. | Invoicing Policy | **7-4** | Mar. 29/13 |
| I. | Price Policy | **7-4** | Mar. 29/13 |
| J. | Freight Policy | **7-4** | Mar. 29/13 |
| K. | Credit Memo Procedures | **7-5** | Jul. 17/14 |
| L. | Buy-Out of Competitors' Cards Policy | **7-9** | Mar. 29/13 |
| M. | Buy-Out of Competitors' Cards Procedure | **7-9** | Mar. 29/13 |
| N. | Seasonal Account Policy | **7-9** | Mar. 29/13 |
| O. | Mailings Policy | **7-9** | Mar. 29/13 |
| P. | Car Stock Policy | **7-10** | Mar. 29/13 |
| Q. | Sample Policy | **7-10** | Mar. 29/13 |
| R. | Sample Request Procedure | **7-10** | Mar. 29/13 |

## 1.  Table of Contents

| SECTION | | PAGE NUMBER | LAST UPDATE |
|---|---|---|---|
| **8.** | **PAYMENT, TERMS & ESTABLISHING CREDIT** | **8-1** | MAR. 29/13 |
| | A.   Credit application for new accounts | **8-1** | MAR. 29/13 |
| | B.   Payment Terms and New Account Limits | **8-1** | MAR. 29/13 |
| | C.   Existing account reviews | **8-1** | MAR. 29/13 |
| | D.   Credit Hold Policy | **8-2** | MAR. 29/13 |
| | E.   Bypassing Credit Hold Policy | **8-2** | MAR. 29/13 |
| | F.   Collection Call Policy | **8-3** | MAR. 29/13 |
| | G.   Sales Representative's role in collection | **8-3** | MAR. 29/13 |
| | H.   Receivables report – ATB | **8-3** | MAR. 29/13 |
| | I.   Overdue Accounts – Commissions Reversal Policy | **8-3** | MAR. 29/13 |
| | J.   Third Party Collection Policy | **8-3** | MAR. 29/13 |
| | K.   Credit and Re-bill of Product Policy | **8-4** | MAR. 29/13 |
| **9.** | **COMMISSION POLICY** | **9-1** | MAR. 29/13 |
| | A.   Net Invoice Definitions | **9-1** | MAR. 29/13 |
| **10.** | **DISPLAY RACKS** | **10-1** | MAR. 29/13 |
| **11.** | **PRICE LISTS** | **11-1** | MAR. 29/13 |
| **12.** | **HOW TO ACCESS AND USE WEB-BASED REPORTS** | **12-1** | MAR. 29/13 |
| **13.** | **IMPRINTABLE CATALOGUE & PROCEDURES** | **13-1** | MAR. 29/13 |
| **14.** | **CUSTOM CATALOGUE** | **14-1** | MAR. 29/13 |

# EXHIBIT "E"

Sent from my IPad

On Jan 23, 2018, at 11:03 AM, Irving Weisdorf <IWeisdorf@pcfsouvenirs.com> wrote:

Dear Jody,

I want to thank you for your 6 ½ years of working for PCF. We had both good times and bad together. AS you wrote: "It's been mostly a pleasure"!

I think you know that things were far from perfect, even before you took ill. You blasted PCF on the internet – that was the starting point. Not a good idea to do if you want to continue representing a company. That's advice for the future!

As well, you have quit on us twice. So for the sake of the company, we had to plan this out in advance.

Finally, you are not well enough physically to do the job we need you to do. The constraints that COPD puts on you can be incapacitating, and it would be the wrong move to simply wait for proof of that. As well, you put your own self at risk with a heavy schedule.

I would strongly suggest finding a position that is less strenuous, less demanding. You have done a stellar job on many fronts. We thank you for it and honestly wish you all the best in the future.

# Irving

<image001.jpg>

**Irving Alan Weisdorf, CEO**
**The Postcard Factory,** *a division of*
**The Weisdorf Group of Companies Inc.**
2801 John Street,
Markham, Ontario, Canada
L3R 2Y8
Direct: 905-477-4148
**www.pcfsouvenirs.com**
**iw@PCFsouvenirs.com**

---------- Forwarded message ----------
From: **"Jody Saunders"** <jody_reps@hotmail.com>
Date: Tue, Jan 23, 2018 at 9:38 AM -0600
Subject: Goodbye -
To: "PCF USA Sales" <PCFUSASales@pcfsouvenirs.com>

Just wanted to let you all know that after producing over $855,000 in 2017 (400,000 in 2015, 805,000 2016) I have been terminated with PCF after 6 1/2 years without cause.

It's been mostly a pleasure...

Best,